**In the Matter of the CONTESTED CASE OF MAPLETON COMMUNITY HOME, INC., Meadow Manor Nursing Home, Minnesota Odd Fellow Home, St. Luke's Lutheran Home, St. Mark's Lutheran Home, and Janesville Nursing Home.**

Nos. CO–85–468, C2–85–505.

Court of Appeals of Minnesota.

Sept. 3, 1985.

Review Granted Nov. 4, 1985.

John M. Broeker, Samuel D. Orbovich, Bloomington, for Park Point Manor et al.

K. Craig Wildfang, Minneapolis, for Ambassador Care, et al.

Hubert H. Humphrey, III, Atty. Gen., Beverly Jones Heydinger, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Human Services.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Relators, a group of nursing homes, appeal from an order of the Commissioner of Human Services affirming the Department of Human Services' (DHS) adjustments to the property-related costs used in establishing the medical assistance rate to be paid to the homes for the year beginning July 1, 1983. The nursing homes contend that (1) both DHS's definition of rate limitations and its method of calculating the property-related cost payment rate constitute unpromulgated rules; (2) the administrative law judge committed reversible error by giving deference to DHS's interpretation of 12 MCAR § 2.05011B.1; and (3) the property-related payment rate is arbitrary, capricious and confiscatory. We affirm.

## FACTS

The nursing homes involved here participate in the State's medical assistance program and are reimbursed on a per diem basis for care which they provide to welfare residents. Prior to July 1, 1983 the per diem reimbursement rate was governed by Minn.Rules ch. 9510 (1983). Prospective per diem rates were calculated by dividing the number of patient days for the prior year into the allowable costs for the prior year plus projected known cost increases. This per diem rate was subject to three limitations. The private pay rate limitation

limited the per diem rate to the rate a nursing home was charging its non-medical assistance residents. Minn.Stat. § 256B.48; Minn.Rule 9510.0130, subp. 1. The regional maximum rate limitation limited a home's per diem rate to 125 percent of the home's regional average costs, plus known cost changes. Minn.Rule 9510.0130, subp. 2. Finally, the per diem rate was limited to 10 percent more than the rate allowed to the home in the preceding year (the 110 percent limitation). Minn.Stat. § 256B.03, subd. 2. If the per diem rate exceeded one or more of the limitations, the lowest rate was used as the reimbursement rate for the nursing home.

Effective July 1, 1983 the method for establishing the per diem reimbursement rate was changed. 1983 Minn.Laws, ch. 199, § 12 (codified at Minn.Stat. § 256B.431 (1984)). DHS adopted temporary rules to implement the statute. 12 MCAR §§ 2.05001–2.050156 (Temporary Rule 50). The temporary rules are effective retroactive to July 1, 1983.

Under the new rate setting system the total payment rate is the sum of the operating cost payment rate, the property-related cost payment rate, and the real estate taxes and special assessments payment rate. At issue in this case is the calculation of the property-related cost payment rate.

For the rate year beginning July 1, 1983 DHS auditors computed the recognized property-related costs using the most recent costs report received by December 31, 1982 and audited by March 1, 1983. It then adjusted the property-related costs by applying the three rate limitations. Under Rule 9510 the rate limitations were applied to the final per diem rate and not the individual rate components. DHS applied the rate limitations to the property cost component by applying a ratio which would adjust the property-related costs on a proportional basis. The denominator of the ratio is the maximum allowable rate. The numerator is the lowest of the three limitation rates. The limitation ratio for each care level is multiplied by the recognized property cost properly allocated to it. The

result is the adjusted property-related cost. This figure is divided by the appropriate number of capacity days to obtain the property-related cost payment rate.

For the rate year beginning July 1, 1983 the property-related cost component for each of the nursing homes involved in this proceeding was subjected to the three rate limitations. The ratio which adjusts the property-related costs on a proportional basis was applied. The nursing homes challenged the use of the rate limitations and the ratio.

A hearing was held before an administrative law judge. The matter was submitted on stipulated facts and exhibits and written briefs. The administrative law judge considered the issue whether "recognized property-related costs are subject to a proportional adjustment for rate limitations in effect on July 1, 1983 * * *." He recommended that the Commissioner of the Department of Human Services affirm the rate limitation adjustment made to the nursing homes property-related costs. The Commissioner adopted the administrative law judge's findings, conclusions and recommendation. With the exception of one paragraph the Commissioner also adopted the memorandum of the administrative law judge. In his substituted paragraph the Commissioner recognized that the nursing homes argued that the DHS's method of calculation is an unpromulgated rule. He concluded that 12 MCAR § 2.05011B.1, was at worst, ambiguous, and the department's interpretation of it is reasonable, practical and consistent with the rule. He affirmed the department's decision to apply the rate limitations and to use the ratio.

**ISSUES**

1. Are property-related costs subject to the private pay rate limitation, the regional maximum rate limitation, and the 110 percent limitation?

2. Does DHS's method of calculating the operating cost payment rate constitute an unpromulgated rule?

3. Did the administrative law judge commit reversible error by giving deference to DHS's interpretation of 12 MCAR § 2.05011B.1?

4. Is the property-related payment rate arbitrary, capricious and confiscatory?

## ANALYSIS

1. Minn.Stat. § 256B.431, subd. 3 (1984) governs reimbursements for property-related costs.

> For rate years beginning July 1, 1983 and July 1, 1984, property-related costs shall be reimbursed to each nursing home at the level recognized in the most recent cost report received by December 31, 1982 and audited by March 1, 1983, and may be subsequently adjusted to reflect the costs recognized in the final rate for that cost report, *adjusted for rate limitations in effect before effective date of this section.*

Minn.Stat. § 256B.431, subd. 3(a) (emphasis added). The property-related costs include depreciation, interest, earnings or investment allowance, lease or rental payments. *Id.* 12 MCAR § 2.05011B.1 supplements Minn.Stat. § 256B.431.

> For the rate years beginning on July 1, 1983, and July 1, 1984, the property-related costs include the allowable depreciation, interest, investment allowance, and lease or rental payment expenses at the dollar level recognized in the most recent cost report received by the Commissioner by December 31, 1982, and audited by March 1, 1983. These costs must be subsequently adjusted to reflect the costs recognized in the final rate for that cost report, adjusted for rate limitations in effect May 1, 1983.

12 MCAR § 2.05011B.1.

The nursing homes complain that before defining the "rate limitations" of Minn. Stat. § 256B.431 by rule DHS applied the private pay rate limitation, the regional maximum rate limitation and the 110 percent limitation. They acknowledge that these limitations were in effect on May 1, 1983, but argue that the limitations do not exclusively or directly restrict property-re-

lated costs and that only those limitations which exclusively or directly restrict property-related costs are referred to by the words "rate limitations" in Minn.Stat. § 256B.431, subd. 3. Specifically, the homes argue that "rate limitations" refers only to the limits placed on property-related costs which were imposed under the former system. We find no merit in this argument.

Minn.Stat. § 256B.431 does not define the rate limitations as those which exclusively or directly restrict property-related costs. Rather it sets the rate limitations as those "in effect before the effective date of this section." The limits placed on property-related costs restrict the amount a nursing home is allowed for a specific type of expense such as depreciation. They limit the costs which are recognized in the most recent cost report received by the Commissioner by December 31, 1982 and audited by March 1, 1983.

The nursing home's contention that DHS can do no more than apply the limitations which are placed on property-related costs would render the following part of the statutory language superfluous:

> ... and may be subsequently adjusted to reflect the costs recognized in the final rate for that cost report, adjusted for rate limitations in effect before the effective date of this section.

Minn.Stat. § 256B.431, subd. 3(a). The nursing homes argue that this language would not be superfluous if the "final rate" were the rate established subsequent to a field audit rather than the rate established subsequent to a desk audit. Final rate is defined by Minn.Stat. § 256B.421, subd. 4 (1984) as:

> The rate established after *any* adjustment by the commissioner, *including but not limited to* adjustments resulting from cost report reviews and field audits.

Since the final rate is the rate established after any adjustment, including a field audit, the nursing homes definition of final rate is too narrow and its interpretation of

Minn.Stat. § 256B.431 fails to give meaning to the entire statute.

■ The private pay rate limitation, the regional maximum rate limitation and the 110 percent limitation are all rate limitations which were in effect at the time Minn. Stat. § 256B.431 was enacted. Property-related costs must be adjusted by these limitations. Since the statute clearly defines the rate limitations to be applied, DHS was not required to promulgate a rule defining the limitations.

2. The nursing homes contend the ratio used by DHS fits the statutory definition of a rule and is invalid because it is unpromulgated.

■ DHS initially asserts that the nursing homes failed to raise the argument that the ratio constitutes an unpromulgated rule before the administrative law judge and therefore we are precluded from addressing the issue on appeal. In the last paragraph of his memorandum the administrative law judge noted that 12 MCAR § 2.05011B.1 does not specify how DHS should compute the adjustment to the property-related costs when the allowable rate exceeds one of the rate limitations. He declined to consider whether DHS's interpretation is an improperly promulgated rule because the parties did not argue the issue. The Commissioner deleted the administrative law judge's final paragraph and substituted a paragraph in which he acknowledged that the DHS rule requires the property-related costs be adjusted without specifying how the adjustment should be made. He further acknowledged that the nursing homes argued that DHS's method of adjustment is an unpromulgated rule. Since the Commissioner concluded that the nursing homes argued that the method of adjustment is an unpromulgated rule, the issue may be considered on appeal.

Neither Minn.Stat. § 256B.431 nor 12 MCAR § 2.05011B.1 contain the ratio used by DHS to adjust property-related costs. Both the statute and the rule merely direct DHS to "adjust for rate limitations in ef-

fect * * *" without specifying how the adjustment should be computed.

■ Interpretative rules are those which "make specific the law enforced or administered by the agency." *Minnesota-Dakotas Retail Hardware Ass'n. v. State*, 279 N.W.2d 360, 364 (Minn.1979). As such they are subject to rulemaking requirements of MAPA. *White Bear Care Center, Inc. v. Minnesota Dept. of Public Welfare*, 319 N.W.2d 7, 9 (Minn.1982). By applying a ratio to property-related costs DHS was in effect interpreting "adjusted for the rate limitations in effect * * *." The question presented, therefore, is whether DHS's application of the ratio was a permissible interpretation of its current rule or an improper promulgation of a new rule. *See Cable Communication Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658 (Minn.1984).

> Generally, if the agency's interpretation of a rule corresponds with its plain meaning, or if the rule is ambiguous and the agency interpretation is a longstanding one, the agency is not deemed to have promulgated a new rule.

*Id.* at 667. There is no longstanding interpretation of 12 MCAR § 2.05011B.1 so we must consider whether DHS's interpretation is consistent with the plain meaning of the rule.

■ The gravamen of the nursing homes complaint is that the three rate limitations have been applied. The nursing homes make no argument that given the application of the rate limitations, the method used is inconsistent with the plain meaning of the rule. They merely assert that all interpretation, including the ratio, must be promulgated. We are unwilling to make the broad holding requested by the nursing homes. This court will invalidate an agency action where the agency, without following MAPA procedure, adopts a policy which is inconsistent with its regulations. *See Cable Communications Board*, 356 N.W.2d at 667–8. Here there has been no showing by the nursing homes that the ratio applied is inconsistent with 12 MCAR

§ 2.05011B.1. We will not invalidate the ratio.

■ 3. The nursing homes contend that the administrative law judge committed reversible error by giving deference to DHS's interpretation of 12 MCAR § 2.05011B.1. In this case the administrative law judge was interpreting a rule which had not yet been interpreted by the Commissioner. The deference was being given to the agency staff. We agree with the nursing homes that such deference is unwarranted and in contrast to the deference which is to be given to a contemporaneous interpretive regulation. *See Bremer v. Commissioner of Taxation,* 246 Minn. 446, 75 N.W.2d 470 (Minn.1956). While deference is unwarranted, respect is due to the contemporaneous construction of a statute by those "charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting *Power Reactor Development Co. v. International Union of Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961)).

The nursing homes cite no authority for the proposition that it is reversible error for an administrative law judge to give deference to a department's interpretation of its own statute. We have not found any such authority and decline to find reversible error. The administrative law judge did not make the final decision in this case, the Commissioner did. Moreover, this was not a case where deference was given without more. The administrative law judge found the department's interpretation of the rule was "consistent with the language of the statute *and* subject to deference." (Emphasis added). He thoroughly analyzed the statute and the nursing homes' arguments. The Commissioner had ample basis upon which to base his decision.

■ 4. The nursing homes contend that the Commissioner's decision to apply the three rate limitations has the "capability" of reducing a home's property-related payment rate to below its reported property cost. It argues that the rate is thus arbitrary, capricious, and confiscatory and that it should not withstand judicial review under *State v. Northern Pacific Railway Co.,* 229 Minn. 312, 39 N.W.2d 752 (1949).

There is no merit to this argument. The rate actually paid to a nursing home is not just a property-related payment rate but the sum of the operating costs payment rate, the property-related cost payment rate and the real estate and tax and special assessment payment rate. 12 MCAR § 2.050113 (temporary). The issue of whether the total rate is confiscatory was not raised and no findings or conclusions were made. There is no record or decision on the matter for this court to review.

### DECISION

Under Minn.Stat. § 256B.431, subd. 3(a) (1984) and 12 MCAR § 2.05011B.1 property-ty-related costs are subject to the private pay rate limitation, the regional maximum rate limitation and the 110 percent limitation. The nursing homes did not meet their burden of showing the Department of Human Services' method of calculating operating costs payment rate is inconsistent with 12 MCAR § 2.05011B.1. No reversible error was committed when the administrative law judge gave deference to the Department of Human Services' interpretation of 12 MCAR § 2.05011B.1. The property-related payment rate is not arbitrary, capricious or confiscatory.

AFFIRMED.

POPOVICH, C.J., dissents in part.

POPOVICH, Chief Judge (dissenting in part).

I agree with the majority that Minn.Stat. § 256B.431 clearly defines "rate limitation" and no rulemaking is necessary to further define it. I do not agree, however, that we should not hold that the ratio constitutes an unpromulgated rule because the nursing homes failed to show that the ratio is inconsistent with 12 MCAR § 2.05011B.1.

The legislature directed the Commissioner to "establish, by rule, *procedures* for determining rates * * * and for implementing the provisions of sections * * * 256B.431 * * *." Minn.Stat. § 256B.41 (1984) (emphasis added). While the Commissioner did establish rules, 12 MCAR § 2.05011B.1 merely parrots the words, "adjusted for rate limitations in effect," in Minn.Stat. § 256B.431, subd. 3, rather than specifically establishing a procedure such as the ratio which is now in use. Indeed, the Commissioner candidly acknowledges that the DHS rules require that the property-related costs be adjusted without specifying how adjustments should be made.

The legislative mandate is clear. Procedures for determining rates must be established by rule. The ratio used by the DHS is a procedure which has not been established by rule. Since the procedure in use was not promulgated by rule, it is invalid.

The deference given by the administrative case judge to the agency staff's interpretation of 12 MCAR § 050511B.1 is totally unwarranted. When a rule has not yet been interpreted by the Commissioner or a court, the administrative law judge should base his or her analysis on the language of the rule alone.