In the Matter of the Contested Case of MAPLETON COMMUNITY HOME, INC., Meadow Manor Nursing Home, Minnesota Odd Fellows Home, St. Luke's Lutheran Home, St. Mark's Lutheran Home, and Janesville Nursing Home, Appellants.

v.

MINNESOTA DEPARTMENT OF HUMAN SERVICES, Respondent.

Nos. C0-85-468, C2-85-505.

Supreme Court of Minnesota.

Aug. 8, 1986.

John M. Broeker, Samuel D. Orbovich, Bloomington, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Beverly Jones Heydinger, St. Paul, for respondent.

WAHL, Justice.

Nursing home participants in the state Medical Assistance program [1] appeal from a decision of the court of appeals affirming an order of the Commissioner of Human Services. The Commissioner upheld the Department of Human Services' (DHS) adjustments to the property-related cost component used in calculating the Medical Assistance reimbursement rate for the year beginning July 1, 1983. We affirm.

This appeal arose from a change in the Medical Assistance reimbursement system and the underlying facts are not in dispute. Before July 1, 1983, Medical Assistance reimbursement rates were determined by Minn.Rules, pt. 9510.0010–9510.0480 (1982), referred to as "Rule 49." Concerned by rising health care costs, the legislature revised the reimbursement system for the biennium beginning July 1, 1983, establishing an interim rate system effective until July 1, 1985. 1983 Minn.Laws, ch. 199, § 21, 501, 525. The legislature directed the

---

1. The named parties filed a Medical Assistance rate appeal and the DHS initiated a contested case proceeding, in which appellants intervened. The intervenors, but not the original parties, appealed the case.

DHS to implement the interim rate system by temporary rules. Minn.Stat. §§ 256B.502; 256B.41 (1984). The DHS accordingly promulgated such rules, codified at 12 MCAR §§ 2.05001–2.05016 (Temporary), and referred to as "Rule 50." Rule 50 calculates a nursing home's total costs reimbursement rate by adding together three component rates: an operating costs rate, a property-related costs rate, and a real estate tax and special assessments costs rate. *See* Minn.Stat. § 256B.431 (1984). Only the property-related costs component is at issue in this case.

The statute governing reimbursement for property-related costs under the interim rate system provides, in relevant part:

> *Property-related costs.* For rate years beginning July 1, 1983, and July 1, 1984, property-related costs shall be reimbursed to each nursing home at the level recognized in the most recent cost report received by December 31, 1982, and audited by March 1, 1983, and may be subsequently adjusted to reflect the costs recognized in the final rate for that cost report, adjusted for rate limitations in effect before the effective date of this section.

Minn.Stat. § 256B.431, subd. 3(a) (1984). Rule 50, promulgated by the DHS to implement subdivision 3(a), provides, in relevant part:

> For the rate years beginning on July 1, 1983, and July 1, 1984, the property-related costs include the allowable depreciation, interest, investment allowance, and lease or rental payment expenses at the dollar level recognized in the most recent cost report received by the Commissioner by December 31, 1982, and audited by March 1, 1983. These costs must be subsequently adjusted to reflect the costs recognized in the final rate for that cost report, adjusted for rate limitations in effect May 1, 1983.

12 MCAR § 2.05011B.1 (Temporary).

The DHS used the following procedure to calculate the property-related costs reim-

bursement rate under the interim rate system. First DHS identified a "recognized property costs" figure. The nursing homes submitted reports of actual costs to the DHS and the reports were audited according to the allowable costs limits in effect under Rule 49, resulting in a "recognized property costs" figure. The "recognized property costs" figure was then adjusted by rate limitations also in effect under Rule 49: the private pay rate limitation, the regional maximum rate limitation, and the 110 percent rate limitation.[2] Under Rule 49, these rate limitations had been applied to the total of all costs components, not just to the property-related costs component. Under the interim rate system, the legislature directed that the rate limitations were applied only to the property-related costs component. To account for any distortion caused by this difference between the Rule 49 and Rule 50 methods of applying the rate limitations, the DHS developed a mathematical ratio by which to adjust property-related costs on a basis proportional to total costs. The ratio was not promulgated as part of Rule 50. After adjusting the "recognized property costs" figure according to the rate limitation ratio, the final step in calculating the reimbursement rate under Rule 50 was to divide the adjusted costs figure by the appropriate number of days to identify the per diem payment rate. For the rate year beginning July 1, 1983, appellants' reported property-related costs were adjusted by the three rate limitations and the proportional ratio was applied.

Appellants argue on appeal: (1) DHS improperly applied the rate limitations of Rule 49 to adjust property-related costs and that application and DHS' ratio method of calculating the adjustment under Rule 50 constitute invalid unpromulgated rules; (2) the administrative law judge committed reversible error by giving deference to the DHS' interpretation of Rule 50; and (3) the

---

**2.** These rate limitations set a "ceiling" or maximum reimbursement rate, which no individual nursing home's reimbursement rate could exceed, regardless of the actual allowable costs the home reported. *See* Minn.Rules pt. 9510.0130 (1982).

property-related reimbursement rate as calculated under Rule 50 is arbitrary, capricious and confiscatory.

## I.

The nursing homes contend that the DHS improperly applied the rate limitations of Rule 49 to adjust property-related costs and that that application and the DHS' ratio method of calculating the adjustment under Rule 50 constitute invalid unpromulgated rules.

Rule 50 provides that the costs reported to the DHS are to be "adjusted to reflect the costs recognized in the final rate for that cost report, adjusted for rate limitations in effect May 1, 1983." The language of Rule 50 is virtually identical to that of the statute it was promulgated to implement. Minn.Stat. § 256B.431, subd. 3(a) (1984) provides that property-related costs reported to the DHS "may be subsequently adjusted to reflect the costs recognized in the final rate for that cost report, adjusted for rate limitations in effect before the effective date of this section." The DHS interprets the "rate limitations" language of subdivision 3(a) and Rule 50 as a reference to the three rate limitations in effect under Rule 49. The nursing homes argues, on the other hand, that the "rate limitations" referred to are the allowable cost limits set out by the DHS for use in auditing nursing home cost reports. The ALJ and the Commissioner adopted the DHS' interpretation of "rate limitations." The court of appeals affirmed, reasoning that the nursing homes' interpretation of the "rate limitations" language could not be the correct reading because it failed to give meaning to the language of the entire provision. *In Re Mapleton Community Home, Inc.* 373 N.W.2d 815, 818–19 (Minn. Ct.App.1985).

It is our view that the DHS' interpretation of the "rate limitations" language reflects the plain meaning of subdivision 3(a) and Rule 50. The statute and rule provide for two adjustments to the property-related costs reported by the nursing homes to the DHS. First, reported costs are to be "adjusted to reflect the costs recognized in the final rate for that cost report." This "final rate" may then be further adjusted, according to the language of the statute, by application of "rate limitations in effect at the effective date of this section," which date Rule 50 identifies as May 1983. 1983 Laws of Minnesota, ch. 199, § 21, 501, 525. The first adjustment plainly refers to the DHS audit, wherein reported costs are allowed or disallowed, resulting in a "final rate." The second adjustment must, therefore, refer to an adjustment mechanism separate from the audit procedure. Any other interpretation would render the language providing for a second adjustment superfluous. In construing a statute, we presume the legislature intends the entire statute to be effective and certain. Minn.Stat. § 645.17, subd. 2 (1984). We agree with the DHS that the language "rate limitations in effect" plainly means the three rate limitations in effect under Rule 49: the private pay rate limitation, the regional maximum rate limitation, and the 110 percent rate limitation.

Appellants contend that even if the DHS' interpretation of the "rate limitations" language is the correct one, the agency's definition of the language is a rule required to be promulgated in accordance with the Minnesota Administrative Procedures Act, Minn.Stat. ch. 14 (1984). An agency interpretation that "make[s] specific the law enforced or administered by the agency" is an interpretive rule that is valid only if promulgated in accordance with the Act. *Minnesota-Dakotas Retail Hardware Ass'n. v. State*, 279 N.W.2d 360, 364 (Minn.1979). *See* Minn.Stat. § 14.05, subd. 1 (1984). Not all interpretations, however, constitute interpretive rules. If an agency's interpretation corresponds with the plain meaning of the rule it construes, the agency is not deemed to have promulgated a new rule. *Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 667 (Minn.1984). Having concluded that the DHS' interpretation of Rule 50

comports with the plain meaning of that rule, as well as with the plain meaning of the statute the rule was promulgated to implement, we hold the DHS' interpretation of Rule 50 need not be promulgated under the Minnesota Administrative Procedures Act to be valid.

The DHS interpreted the directive in subdivision 3(a) and Rule 50 that the rate limitations be applied only to the property-related costs component as requiring development and use of a proportional ratio. The nursing homes contend that the ratio used by DHS to apply the Rule 49 rate limitations is also invalid as an unpromulgated rule as neither subdivision 3(a) nor Rule 50 mention such a ratio.

The rate limitations under Rule 49 applied to the aggregate total of all cost components, whereas under the interim rate system, the legislature directed that the rate limitations apply only to the property-related costs component. The DHS contends that only a proportional application of the rate limitations comports with the directive to apply the rate limitations only to the property cost component of the rate. We find this analysis persuasive. By adopting the ratio method of calculation, the DHS merely translated Rule 50 from words into numbers. In such a case, no additional rulemaking is required to convert the words of a rule into mathematical steps. We therefore hold the mathematical ratio used by DHS to adjust property-related costs under temporary Rule 50 need not be promulgated under the Minnesota Administrative Procedures Act to be valid.

## II.

Appellants next contend that the ALJ erred in giving deference to DHS' interpretation of Rule 50. In the memorandum accompanying his decision, the ALJ stated that in adopting the DHS' interpretation of Rule 50, the department's interpretation was subject to deference. In his final order, the Commissioner also found the department's interpretation subject to deference. The nursing homes contend this deference was improperly given because the

DHS' interpretation of Rule 50 had not been reviewed and approved so as to be a final interpretation to which deference would be properly given. In this case, the ratio interpretation had never been considered and approved by the Commissioner and was a question of first impression before the ALJ.

■ The court of appeals concluded, *Mapleton Community Home*, 373 N.W.2d at 820, as do we, that this deference was unwarranted. In effect, by deferring to the agency, the ALJ deferred to the views of the DHS staff who had developed the ratio interpretation in the first place. As the court of appeals stated, however, this was not a case of deference given, without more. *Id.* The ALJ's memorandum reflects a careful, thorough and intelligent review of the statute and rule, including analysis of the competing views of the parties. This indicates to us that the ALJ adopted his interpretation of Rule 50 independent of any improper deference. We therefore hold the ALJ did not commit reversible error by giving deference to the DHS' interpretation of Rule 50.

## III.

■ The nursing homes' final claim is that rates calculated under the interim rate system are arbitrary, capricious and confiscatory because they may result in facilities being reimbursed at a level below their actual property-related costs. Property-related costs, they allege, are fixed costs and facilities have no flexibility to reduce them if costs actually incurred exceed the amount allowed by application of the rate limitations.

This argument has no merit. Nursing homes are free not to participate in the Medical Assistance program if the reimbursement offered is not satisfactory. We hold the interim Medical Assistance property-related payment rate is not arbitrary, capricious or confiscatory.

Affirmed.