**In the Matter of the Rate Appeal of
ELIM HOMES, INC., Relator,**

v.

**MINNESOTA DEPARTMENT
OF HUMAN SERVICES,
Respondent.**

No. C6–97–1663.

Court of Appeals of Minnesota.

March 10, 1998

Samuel D. Orbovich, Thomas L. Skorczeski, Colleen M. O'Connor, Orbovich & Gaertner, Chartered, St. Paul, for relator.

Hubert H. Humphrey III, Attorney General, Steven J. Lokensgard, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and TOUSSAINT, C.J., and HOLTAN, J.

## OPINION

HARVEY A. HOLTAN, Judge.*

Relator contends the Commissioner of Human Services acted improperly when it rejected the ALJ's recommendation and affirmed the rate adjustment the Department of Human Services had set for the nursing facility. We affirm.

## FACTS

Relator Elim Homes, Inc. (Elim), is a non-profit corporation that provides nursing facility services to the elderly, handicapped, and other individuals with special needs. Elim voluntarily participates in Minnesota's medical assistance program and receives payment from the Department of Human Services (DHS). Minn.Stat. §§ 256B.41–.50 (1996) and Minn. R. 9549.0010–.0080 (1995) govern payment for medical assistance.

Every July 1, DHS sets a prospective per diem payment rate for each participating nursing facility, based on allowable costs that the facility incurred during the prior 12–month "reporting year." Each participating nursing facility files a cost report, which DHS audits to ensure that the report complies with the applicable statutes and rules. After the audit, DHS sets a final payment rate and notifies the nursing facility. The payment rate is effective from July 1 of that year through June 30 of the following year. Minn. R. 9549.0041, subpt. 11.

Elim Care, Inc. is a support corporation of the North Central District Association of the Evangelical Free Church of America that runs Elim Homes. Elim Preferred Services, Inc. (EPS), a wholly-owned subsidiary of Elim Care, is a for-profit, medical equipment and supply corporation. In the reporting year ending September 30, 1992, 22.46% of EPS's total revenues were from sales to Elim nursing facilities. Similarly, for the reporting year ending September 30, 1993, 32.14% of EPS's total revenues were from sales to Elim nursing facilities.

Elim Care acts as the central office for the various Elim entities. When Elim filed its annual cost reports, DHS adjusted the application of the formula that allocates Elim's costs between its central office and its related organizations. Elim appealed the adjustments pursuant to Minn.Stat. § 256B.50. After reviewing the appeals, DHS affirmed the adjustment. Elim then demanded a contested case hearing before an administrative law judge (ALJ). After a hearing, the ALJ issued an order recommending that the department grant Elim's motion for summary disposition and deny DHS's motion. Both parties filed exceptions to the ALJ's recommendation. On review, the DHS commissioner rejected the ALJ's recommendation and granted summary disposition to DHS, essentially affirming DHS's rate adjustment. Elim appealed by writ of certiorari.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

1. Did the DHS commissioner erroneously interpret the statute and contradict general accounting principles when it affirmed DHS's rate adjustment?

2. Did the DHS commissioner deny Elim due process of law by failing to defer to the ALJ's determination on the burden of opposing the motion for summary disposition?

## ANALYSIS

### 1. Calculation of Rate Adjustment

Elim contends the commissioner erroneously interpreted the statute and improperly promulgated a new rule when it affirmed the rate adjustment.

When reviewing an agency decision, this court determines whether the commissioner violated the constitution, exceeded its authority, engaged in unlawful procedure, erred as a matter of law, issued a decision unsupported by substantial evidence, or acted arbitrarily or capriciously. Minn.Stat. § 14.69 (1996); *In re Investigation into Intra–LATA Equal Access & Presubscription,* 532 N.W.2d 583, 588 (Minn.App.1995), *review denied* (Minn. Aug. 30, 1995). The appellate court defers to the agency's expertise in finding facts and will affirm the agency's decision so long as it is lawful and reasonable. *Id.* at 588. An agency decision is arbitrary and capricious if it represents the agency's will rather than its judgment. *Markwardt v. State, Water Resources Bd.,* 254 N.W.2d 371, 374 (Minn.1977).

This case involves medical assistance payments to nursing facilities and the parties' dispute over the method of calculating the rate of payment. The main issue of this case is the allocation of costs for the central office. The parties disagree as to whether the reported "cost of goods sold" for EPS should be included as a "total operating cost" for the purpose of calculating the central office cost allocation ratio.

Minn.Stat. § 256B.41, subd. 3 (1996), mandates that all payment rates be established pursuant to chapter 256B and its accompanying rules regarding medical assistance for the needy. Minn.Stat. § 256B.432 (1996) sets forth the method for allocating costs when a nursing facility such as Elim has

charges from a central office to allocate among its other facilities. Under these guidelines, any central office cost that is directly attributable to a specific nursing facility must be allocated to that facility. *Id.,* subd. 3. Any central office cost that can be identified with any other activity or function other than a nursing facility must be allocated to that activity and cannot be part of the facility's allocation of central office costs. *Id.,* subd. 4. Finally, once all costs directly related to a facility have been allocated, the remaining central office costs must be divided among the organization's remaining nursing and non-nursing facilities based on a ratio of total operating costs. *Id.,* subd. 5.

The statute also sets out the formula for arriving at that ratio. The numerator of the ratio depends on the nature of the relationship between the nursing and non-nursing facilities. *Id.,* subd. 5(b)(1)-(4). The department also makes an allocation between Minnesota and non-Minnesota facilities based on their totals of resident days. *Id.,* subd. 6(a). The denominator of the ratio is the sum of all the numerators that apply from subdivision 5(b)(1)-(4). *Id.,* subd. 5(c).

The allocation ratio statute provides:

After the costs that can be directly identified * * * have been allocated, the remaining central, affiliated, or corporate office costs must be allocated between the nursing facility operations and the other activities or facilities unrelated to the nursing facility operations based on the ratio of total operating costs.

(b) For purposes of allocating these remaining central, affiliated, or corporate office costs, the numerator for the allocation ratio shall be determined as follows:

* * * *

(2) for a central, affiliated, or corporate office providing goods or services to related organizations that are not nursing facilities, the numerator of the allocation ratio shall be equal to the sum of the *total operating costs* incurred by the nonnursing facility related organizations.

Minn.Stat. § 256B.432, subd. 5(a), (b)(2) (emphasis added).

The statute defines operating costs for a nursing facility as:

> The day-to-day costs of operating the facility in compliance with licensure and certification standards. Operating cost categories are: nursing, including nurses and nursing assistants training; dietary; laundry and linen; housekeeping; plant operation and maintenance; other care-related services; medical directors; licenses, other than license fees required by the Minnesota department of health; permits; general and administration; payroll taxes; real estate taxes, license fees required by the Minnesota department of health, and actual special assessments paid; and fringe benefits, including clerical training; and travel necessary for training programs for nursing personnel and dietitians required to maintain licensure, certification, or professional standards requirements.

Minn.Stat. § 256B.421, subd. 8 (1996). The statute does not contain a definition for operating costs of a non-nursing facility, such as EPS is here. Consequently, no statute defines operating costs for a non-nursing home enterprise for the purpose of allocating central office costs among both nursing and non-nursing facilities.

Acknowledging that fact, and noting that the subsections of Minn.Stat. § 256B.432, subd. 5, require an "apple-to-apple" comparison of costs incurred by nursing facilities and non-nursing facilities, the commissioner concluded that the term "total operating costs" could be defined to include the cost of goods sold from a non-nursing facility, such as EPS, and still be consistent with the overall allocation formula set forth in the statute. The commissioner noted that the cost of goods sold did not constitute a property-related cost under Minn.Stat. § 256B.431, subd. 3g–3i (1994). Finally, the commissioner concluded that the rate-setting scheme set out in the statutes and the rules prevailed over any generally accepted accounting principles that Elim suggested should control here.

Elim contends that the commissioner's decision, in interpreting the cost of goods sold as an operating cost to be allocated between the nursing and non-nursing facilities, was invalid because it constituted the improper promulgation of a new rule without compliance with Minnesota Administrative Procedure Act (MAPA). *See Ford Motor Co. v. Federal Trade Comm'n,* 673 F.2d 1008, 1010 (9th Cir.1981) (holding it unfair for FTC to alter rule with widespread application by adjudication rather than through rulemaking process).

Minnesota agencies' authority to promulgate rules is restricted to compliance with MAPA. Minn.Stat. § 14.05, subd. 1 (1996).

> Rules must be adopted in accordance with specific notice and comment procedures established by statute * * * and the failure to comply with necessary procedures results in invalidity of the rule.

*White Bear Lake Care Ctr. v. Minnesota Dep't of Pub. Welfare,* 319 N.W.2d 7, 9 (Minn.1982).

When an agency adopts policy that is inconsistent with its administrative regulations, and does so without following MAPA procedures, the court will invalidate the agency's action. *Cable Communications Bd. v. Nor–West Cable Communications Partnership,* 356 N.W.2d 658, 667–68 (Minn.1984). Consequently, if the agency's interpretation corresponds with the plain meaning of the rule that it is construing, then the agency has not promulgated a new rule and has not violated MAPA. *Mapleton Community Home, Inc. v. Minnesota Dep't of Human Servs.,* 391 N.W.2d 798, 801 (Minn.1986).

The lack of a definition of operating costs for non-nursing facilities does not lead to an undeniable conclusion that the commissioner improperly promulgated a rule by interpreting the statute and finding a workable solution within the language he was given. In his expertise and knowledge of the medical assistance statute, the commissioner determined that, because the subsections of the allocation ratio statute referred to total costs incurred at both nursing and non-nursing facilities, that term could be interpreted the same in either context, despite the fact that the statute only defined operating costs in terms of nursing facilities. This interpretation does not stray from the plain language of the statute, but rather is a reasonable extension and interpretation of the language.

Elim argues that the legislature's 1993 amendment of the statutory language from "expenses" to "all operating costs" did not reflect any intention to include inventory, as is involved here. We disagree. On its face, the phrase "all operating costs" is broader and more inclusive than the term "expenses." If we were to treat the phrases the same, we would render the statutory amendment meaningless. Our mandate to construe the law "to give effect to all its provisions" prohibits such an interpretation. Minn.Stat. § 645.16 (1996).

■ Elim also contends the commissioner ought to have based the allocation of costs on generally accepted accounting principles and auditing standards issued by the Financial Accounting Standards Board. The legislature, however, establishes the rate-setting methods for nursing homes. Thus, the commissioner properly relied on statutory language rather than on accounting principles.

The commissioner's interpretation was true to the plain language of the medical assistance statute. The record supports his conclusion to uphold the rate adjustment as the department of human services had calculated. The commissioner's decision was not arbitrary or capricious and may stand.

**2. Due Process**

Elim requests that this court revamp the standard of review that the commissioner imposes on the findings and conclusions of the ALJ. Elim "invites this Court to adopt a doctrine of administrative-judicial comity that requires the Commissioner to defer to the Administrative Law Judge's legal expertise, just as Courts defer to the Commissioner's technical expertise." This issue would be better presented to the legislature than to this court.

Elim also raises an issue regarding the problematic role of the attorney general as both counsel for the Department of Human Services at one point in the proceedings and then later as counsel to the commissioner when reviewing the ALJ's recommendation. Elim hints at potential bias and appearance of prejudice and partiality due to the attorney general's presence at two different stages of the case, even though, as a general rule, two different assistant attorneys general deal with the different stages of the case. *See Richview Nursing Home v. Minnesota Dep't of Pub. Welfare,* 354 N.W.2d 445, 460 (Minn.App.1984) (acknowledging and permitting practice of having attorneys general represent a party and provide counsel to commissioner, so long as decisionmaker was not biased and attorney general has no opportunity to see or review draft of commissioner's decision), *review denied* (Minn. Oct. 30, 1984). Here again, Elim's challenge would be better presented to the legislature. Minn. Stat. § 8.06 (1996) holds the attorney general responsible for representing state agencies. Based on that statute, the Minnesota Supreme Court has recognized the unique nature of the attorney general's office in representing state agencies and has permitted attorneys general to represent multiple government clients, whereas attorneys in private practice could not perform such a task. *See Humphrey on Behalf of State v. McLaren,* 402 N.W.2d 535, 543 (Minn.1987). Elim's claims do not succeed on appeal.

**DECISION**

The term "total operating costs" includes the cost of goods sold from a non-nursing facility and is consistent with the allocation formula set forth in Minn.Stat. § 256B.432, subd. 5. The commissioner's interpretation of the statutes was not an improper promulgation of a new rule, but rather was an interpretation and application of the plain language of the statute. Elim's due process claims fail.

**Affirmed.**