LARKIN, Judge
In this certiorari appeal, relator challenges a final agency decision granting *90 summary disposition to affirm a compliance order issued by respondent Minnesota Department of Labor and Industry (the department) for violations of the Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. §§ 177.21 -.35 (2016). Because we conclude that genuine issues of material fact preclude a grant of summary disposition and that the department exceeded its authority by applying an unpromulgated rule, we reverse and remand for further proceedings.
FACTS
Relator Minnesota Living Assistance, Inc. d/b/a Baywood Home Care (Baywood) is a Minnesota corporation that employs home health aides to provide companionship services for individuals in need of assistance to stay in their homes. The employees work 24-hour shifts in client homes. During the time period relevant to this appeal, Baywood paid its employees a daily rate of $165 or $170.
In March 2014, the department received a complaint that Baywood was not paying overtime required by the MFLSA and initiated an investigation into whether Baywood violated the MFLSA between March 21, 2012, and March 21, 2014 (the audit period). As a result of that investigation, the department issued a compliance order, determining that Baywood had violated the MFLSA by failing to pay overtime to 112 home-health-aide employees (the employees) and ordering payment of back wages totaling $557,713.44 and an equal amount in liquidated damages.[1] Baywood contested the order, and the department initiated contested-case proceedings under the Minnesota Administrative Procedure Act (MAPA). See Minn. Stat. §§ 14.57 -.69 (2016) (governing contested-case proceedings).
After engaging in discovery, Baywood and the department filed cross-motions for summary disposition. Baywood asserted that it paid the employees under a "split-day plan" that included overtime pay and, alternatively, that the department erred by failing to exercise discretion in determining whether to award liquidated damages. The department disputed that Baywood used a split-day plan, and alternatively asserted that the MFLSA does not permit split-day plans. The department also asserted that it lacked discretion to forgo an award of liquidated damages. An administrative-law judge (ALJ) heard oral argument and issued proposed findings of fact and conclusions of law and a recommendation that the compliance order be affirmed with respect to the overtime violations. The parties submitted exceptions and arguments, and a designee for the commissioner of labor and industry (the commissioner) issued a final administrative order affirming the compliance order.
Baywood appeals.
ISSUES
I. Did the commissioner err by determining that no genuine fact issues exist regarding whether Baywood used a split-day plan?
II. Did the commissioner exceed his authority by applying an unpromulgated rule to preclude split-day plans?
III. Did the commissioner err by concluding that Minn. Stat. § 177.27, subd. 7, requires an award of liquidated damages?
*91 ANALYSIS
The commissioner is authorized by statute to investigate violations of the MFLSA and issue compliance orders to employers. Minn. Stat. § 177.27, subds. 1-4. An employer may contest a compliance order by filing a written notice of objection with the commissioner within 15 calendar days. Id. , subd. 4. If a timely objection is filed, a contested-case hearing must be held in accordance with MAPA. Id. After contested-case proceedings are initiated, an ALJ shall recommend a summary disposition of a case if "there is no genuine issue as to any material fact." Minn. R. 1400.5500(K) (2017). "Summary disposition is the administrative equivalent of summary judgment." Pietsch v. Minn. Bd. of Chiropractic Exam'rs , 683 N.W.2d 303, 305 (Minn. 2004).
"On review from an order granting summary disposition, the scope of our review is governed by MAPA." In re Gillette Children's Specialty Healthcare , 883 N.W.2d 778, 785 (Minn. 2016). This court
may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the [relator] may have been prejudiced because the administrative findings, inferences, conclusion or decisions are
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) unsupported by substantial evidence in view of the entire record as submitted; or
(f) arbitrary or capricious.
Minn. Stat. § 14.69. When review of an agency decision involves statutory interpretation, this court is not bound by the agency's interpretation, although it may be entitled to some weight if the statute is technical in nature and the agency's interpretation is one of longstanding application. Arvig Tel. Co. v. Nw. Bell Tel. Co. , 270 N.W.2d 111, 114 (Minn. 1978).
Under Minn. Stat. § 177.25, subd. 1, Minnesota employers are required to pay employees "compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed." In this respect, the MFLSA differs from its federal counterpart, the Fair Labor Standards Act (FLSA), which requires overtime pay for hours worked in excess of 40 per workweek. See 29 U.S.C. § 207(a)(1) ; Minn. Stat. § 177.25, subd. 1. This case arises solely under the MFLSA because, until 2015, employees providing companionship services were exempt from overtime requirements under federal administrative rules. See Home Care Ass'n of Am. v. Weil , 799 F.3d 1084, 1088-90 (D.C. Cir. 2015) (summarizing history of exemption). Thus, during the audit period, the employees were exempt from the FLSA but entitled to overtime pay under the MFLSA. See Minn. Stat. § 177.23, subds. 7 (defining employee as an individual employed by an employer with certain exceptions but not excepting companionship-services workers); 11 (defining "hours" for purposes of companionship-services workers to exclude an eight-hour period between 10 p.m. and 9 a.m., during which employees were free to sleep or engage in private pursuits).
It is undisputed in this case that the employees worked hours in excess of 48 per week and that Baywood paid the employees a daily rate of $165 or $170. What is disputed is whether the employees were paid overtime pursuant to a split-day plan and whether the MFLSA allows such plans. The parties also dispute whether the commissioner was required to award statutory *92 liquidated damages. We address each of these issues in turn.[2]
I.
Baywood asserts the commissioner erred by granting summary disposition despite the evidence Baywood offered regarding its alleged split-day plan. As we note above, "summary disposition is the administrative equivalent of summary judgment." Pietsch , 683 N.W.2d at 305 ; see also Minn. R. 1400.6600 (2017) (providing that, in ruling on motions where administrative rules are silent, the ALJ shall apply Minnesota Rules of Civil Procedure to the extent appropriate to promote fair and expeditious hearing). In deciding a motion for summary disposition, the commissioner is required to view the facts in the light most favorable to the nonmoving party. In re Rate Appeal of Benedictine Health Ctr. , 728 N.W.2d 497, 500 & n.3 (Minn. 2007). The commissioner "must not weigh facts or determine the credibility of affidavits and other evidence." Montemayor v. Sebright Prods., Inc. , 898 N.W.2d 623, 628 (Minn. 2017) (quotation omitted). "All doubts and factual inferences must be resolved against the moving party." Id. (quotation omitted). When a genuine issue of material fact exists, summary disposition is inappropriate even if it appears unlikely that the nonmoving party will ultimately prevail. See, e.g. , City of Coon Rapids v. Suburban Eng'g, Inc ., 283 Minn. 151, 157-58, 167 N.W.2d 493, 497 (1969) (reversing grant of summary judgment).
In determining that Baywood violated the overtime requirements of the MFLSA, the department divided Baywood's daily rates ($165 and $170) by the 16 paid hours in a shift[3] to deduce that the employees were paid $10.31 or $10.63 an hour, and were not paid overtime as part of the daily rate. Baywood asserts that it paid its employees under a split-day plan-with a regular rate paid for the first 5.5 hours and an overtime rate paid for the remaining 10.5 hours-and that the commissioner erred by granting summary disposition in spite of the evidence that it provided to support its assertion of this split-day pay plan.
Baywood's evidence included an affidavit from its president, Dorothy Muffett, and affidavits from four Baywood employees. Muffett averred that, consistent with industry practice, Baywood's compensation was expressed as a daily rate, and that she or one of her administrative employees would explain the daily rate to new employees. Muffett further averred:
*93 The compensation plan that Baywood adopted during the relevant time period of this audit was to calculate a companion's pay at a rate that was higher than both the federal and state minimum wages for the first 5.5 hours of a shift and at 1.5 times that rate as a daily premium for the next 10.5 hours of a shift, for a total of 16 hours.
Each of the employee-affiants testified to their understanding that Baywood's pay was composed of straight time and overtime. And, in response to the department's arguments that Baywood's payroll records were inconsistent with its alleged split-day plan, Baywood asserted that an error in Baywood's payroll program caused it to inaccurately reflect the manner in which employees were paid.
Although it is a close case, we conclude that Baywood put forth sufficient evidence to create a genuine issue of material fact regarding how its employees were paid. The affidavits of Muffett and the Baywood employees are evidence that, if believed, support the existence of a split-pay plan under which Baywood paid employees overtime. In recommending summary disposition, the commissioner relied heavily on the department's analysis of Baywood's payroll records and the absence of documentary evidence to corroborate Baywood's assertions regarding its pay plan. But Baywood's affidavits are evidence, and they contradict the department's analysis of the payroll records. Thus, in granting summary disposition, the commissioner necessarily, and improperly, weighed Baywood's evidence to find it less worthy of credence than the department's evidence. Accordingly, we hold that the commissioner erred by granting summary disposition based on a premature determination that Baywood did not use a split-day plan.
II.
Baywood argues that the department erred in interpreting the MFLSA and associated administrative rules to preclude split-day plans and that its interpretation effectively enforces an unpromulgated rule. The commissioner determined that Baywood had forfeited this argument by failing to raise it to the ALJ.[4] We agree with Baywood that, because the issue was raised to the commissioner, who was the final decision-maker, it was not forfeited. In this regard, we note a distinction between evidence, which must be submitted to the ALJ during a contested-case hearing, and argument, which may be made to the ALJ during the hearing and to the agency decision-maker following the hearing. Compare Minn. Stat. § 14.60, subd. 2 (requiring that evidence be made part of "hearing record"), with Minn. Stat. § 14.61, subd. 1 (allowing parties to file exceptions and arguments to the agency). We further note that the supreme court cases cited by the department are inapposite because they address assertions of forfeiture based on the failure to raise issues to the district court, which, like the commissioner, is the final decision-maker. See Patterson v. Wu Family Corp. , 608 N.W.2d 863, 866-68 (Minn. 2000) (addressing circumstances in which party to civil action may be determined to have waived defense of insufficient service of process); Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988) (holding that "reviewing court must generally consider only those issues that ... were presented and considered by the *94 trial court in deciding the matter before it" (quotation omitted) ).[5]
The concept of a split-day plan stems from federal caselaw addressing the FLSA. In the early years after the passage of the FLSA, some employers adopted split-day plans in an attempt to avoid increased wage costs. See, e.g. , Walling v. Helmerich & Payne , 323 U.S. 37, 38, 65 S.Ct. 11, 12, 89 L.Ed. 29 (1944) (explaining split-day, or "Poxon" plans). The employers would pay a lower rate for the first portion of hours worked, and 1-1/2 times that rate for the balance of hours, with the resulting average hourly wage being no higher than before passage of the FLSA. Id. The Supreme Court rejected these attempts to end-run the overtime requirements of the FLSA, reasoning that it undercut the purposes of the statute. Id. at 40, 65 S.Ct. at 13. Congress subsequently amended the FLSA to allow for one form of split-day pay. See 29 U.S.C. § 207(e)(5) (allowing employer to pay daily overtime for hours in excess of eight, or weekly overtime for hours in excess of the employee's normal workweek, without having the premium (1/2) pay be included in the calculation of the overtime rate for hours worked in excess of 40).
The MFLSA is silent on the issue of split-day plans. It provides, simply, "No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed." Minn. Stat. § 177.25, subd. 1. The term "regular rate" is not defined by the statute, but the administrative rules promulgated by the department provide that "[i]n calculating overtime compensation due, the regular rate of pay is determined by dividing the employee's remuneration in any workweek by the total hours worked." Minn. R. 5200.0130 (2017) ; see also Minn. Stat. § 14.38, subd. 1 (2016) (providing that promulgated rules have "force and effect of law"). The rules also provide that "[p]ayments which are not considered part of the employee's remuneration, for purposes of calculating regular pay, include ... premium payments for overtime work or work on Saturdays, Sundays, holidays, or scheduled days off, if the premium rate is at least 1-1/2 times the normal rate." Minn. R. 5200.0140. The rules do not define the "overtime work" for which premium pay can be excluded from the regular-rate-of-pay calculation.
Under the plain language of the statutes and rules, it is unclear whether an employer may pay daily overtime under a split-day pay plan and deduct the premium paid for overtime hours from the calculation of the regular rate of pay. The department argues that "overtime work" refers only to hours worked in excess of 48 per week and that the MFLSA does not allow split-day plans or daily overtime. Baywood asserts that the regulation allows for deduction of the premium portion of daily overtime paid. The analysis of this issue is complicated by the interplay between the FLSA and the MFLSA. Baywood argues that, under the department's interpretation, employers paying overtime for hours worked in excess of 40 under the FLSA would be required to include that premium pay in their calculation of the regular rate for purposes of determining overtime owed under the MFLSA, which would result in a higher overtime rate for hours in excess of 48 per week under the MFLSA than the rate required under the FLSA for hours *95 worked in excess of 40.[6] Baywood further asserts that the department's interpretation constitutes an improper, unpromulgated rule that cannot be the basis for the commissioner's decision.
Under MAPA, Minnesota agencies are required to promulgate administrative rules properly. See Minn. Stat. § 14.05, subd. 1 (2016) ; Minn. Transitions Charter Sch. v. Comm'r of Minn. Dep't of Educ. , 844 N.W.2d 223, 233 (Minn. App. 2014). Because MAPA broadly defines a rule as "every agency statement of general applicability and future effect," Minn. Stat. § 14.02, subd. 4, this court has recognized that agencies must promulgate even interpretive rules. See In re PERA Salary Determinations , 820 N.W.2d 563, 570 (Minn. App. 2012). Notwithstanding the general requirement for promulgation, if the agency's interpretation corresponds with the plain meaning of the statute, or if it is a longstanding interpretation of an ambiguous statute, the agency is deemed not to have promulgated a new rule and the interpretation is not invalid, although it does not have the force and effect of law. Id. (citing In re Contested Case of Good Neighbor Care Ctrs., Inc. v. Minn. Dep't of Human Servs ., 428 N.W.2d 397, 402-03 (Minn. App. 1988), review denied (Minn. Oct. 19, 1988) ). But if the agency's interpretation is not promulgated, and is not consistent with the plain language or a longstanding interpretation of an ambiguous statute, "the rule is 'invalid and cannot be used as the basis for agency action.' " Id. (quoting Good Neighbor , 428 N.W.2d at 402 ).
In this case, the department made a "statement of general applicability and future effect" when it concluded that an employer may only exclude the premium paid for overtime work from the regular-rate-of-pay calculation for hours worked in excess of 48 per week or, put another way, that the MFLSA does not permit split-day plans or daily overtime. The department's statement is a rule that cannot be the basis for agency action unless an exception applies. See In re PERA Salary Determinations , 820 N.W.2d at 570.
The department argues that its statement does not constitute an unpromulgated rule because it is consistent with the plain language of the MFLSA and administrative rules. We disagree. As we explain above, Minn. R. 5200.0140 does not define the "overtime work" for which premium pay may be deducted from the regular-rate-of-pay calculation. Moreover, Baywood and the department have each articulated a reasonable interpretation of the statute and rules.[7] Accordingly, we conclude *96 that the rule is ambiguous and reject the department's assertion that its statement is not an unpromulgated rule because it is consistent with plain language. See id. at 570-71 (holding that unpromulgated rule could not meet plain-language exception because governing statute was ambiguous).
The department also argues that this court should defer to its reasonable interpretation of Minn. R. 5200.0140, but the department does not assert that its interpretation is a longstanding one. And absent a longstanding application, the interpretation cannot be excused from statutory rulemaking requirements. See id. at 573. The purpose of these requirements is to provide the public with "fair notice of the agency's intentions." Coal. of Greater Minn. Cities v. Minn. Pollution Control Agency , 765 N.W.2d 159, 168 (Minn. App. 2009), review denied (Minn. Aug. 11, 2009). "The rulemaking provisions also allow public comments, a hearing, and a review; which is intended to insure that the rule, and the policy expressed, is within the scope of the enabling statute and is otherwise reasonable and constitutional before it is implemented." In re Hibbing Taconite Co ., 431 N.W.2d 885, 894-95 (Minn. App. 1988) (citing Minn. Stat. §§ 14.05-14.47 (1986) ). Moreover, because liquidated damages for a violation of the MLFSA are authorized, it is important that any new rule that would support an award of such damages be subject to the safeguards of the rule-making process. See Minn. Stat. § 177.27, subd. 7 (providing that upon finding a violation of the MLFSA, the commissioner shall order the employer to pay liquidated damages). For these reasons, we reject the department's assertion that the unpromulgated rule is valid because the department's interpretation of the statute is reasonable.[8]
For the reasons explained above, we conclude that the commissioner's alternative basis for affirming the overtime order-that split-day pay plans and daily overtime are not permitted under the MFLSA-was based on an invalid, unpromulgated rule. And we hold that the department may not rely on that unpromulgated rule during further proceedings on remand.
III.
Baywood alternatively argues that the department erred by awarding liquidated damages under Minn. Stat. § 177.27, subd. 7, without exercising any discretion to determine whether such damages were warranted. Although we reverse the commissioner's decision on other grounds, we nevertheless reach this issue in the interest of judicial efficiency because it may recur on remand. See, e.g. , State v. Clark , 755 N.W.2d 241, 258-59 (Minn. 2008) (addressing issues likely to recur upon retrial to offer guidance and in the interest of preserving judicial resources).
Section 177.27, subdivision 7, provides that, upon finding a violation of the MFLSA:
The commissioner shall order the employer to pay to the aggrieved parties back pay, gratuities, and compensatory damages, less any amount actually paid to the employee by the employer, and for an additional equal amount as liquidated damages.
*97 (Emphasis added.) " 'Shall' is mandatory." Minn. Stat. § 645.44, subd. 16 (2016). Cf. id. , subd. 15 (" 'May' is permissive."). Accordingly, the department correctly concluded that it was required to impose liquidated damages.
Baywood argues that the department has discretion not to award liquidated damages, relying on cases that apply a directory-versus-mandatory dichotomy to determine whether the failure to comply with statutory requirements divests a governmental entity of jurisdiction. See, e.g. , In re Civil Commitment of Giem , 742 N.W.2d 422, 426-430 (Minn. 2007) (addressing jurisdictional consequences of district court's failure to hold hearing within time provided for by statute). The supreme court rejected Baywood's argument in Sawh v. City of Lino Lakes , 823 N.W.2d 627 (Minn. 2012). In Sawh , the ordinance at issue provided that, upon a second violation of a dangerous-animal ordinance, an animal control officer "shall" order an animal destroyed. Sawh , 823 N.W.2d at 636-37. The relator argued that the city erred by failing to recognize that the decision whether to destroy the animal was discretionary. Id. at 637. The supreme court disagreed, explaining that "the mandatory-directory dichotomy is irrelevant here because this case does not involve a question about the consequences of an entity's failure to comply with the duties imposed upon it." Id. at 638 n.3. Likewise, because the department acted in accordance with the statute at issue here, the directory-versus-mandatory line of caselaw is inapposite.
DECISION
Because there are genuine issues of material fact regarding Baywood's pay plan, the commissioner erred by granting summary disposition in favor of the department to determine that Baywood violated the MFLSA by failing to pay overtime. The alternative basis for the commissioner's decision-that the MFLSA does not permit split-day plans or daily overtime-is based on an unpromulgated rule that cannot be the basis for agency action. Accordingly, we reverse and remand for a contested-case hearing, during which the department may not rely on the unpromulgated rule.
Reversed and remanded.

The department also determined that Baywood violated the recordkeeping requirements of the MFLSA and ordered a $1,000 penalty. See Minn. Stat. § 177.30. Because the department abandoned this violation during the contested-case hearing and the commissioner reversed it, it is not at issue on appeal.

Baywood also challenges the commissioner's failure to adopt the ALJ's findings regarding the admissibility of employee affidavits obtained by the department that were redacted to conceal the identities of the affiants. Baywood concedes that the "[c]ommissioner did not make the redacted affidavits part of the record" but complains that "there remains no order or explanation to prevent the [department] from attempting to use redacted affidavits in future cases." There is no justiciable issue regarding the redacted affidavits, and the " 'judicial function does not comprehend the giving of advisory opinions.' " State ex rel. Sviggum v. Hanson , 732 N.W.2d 312, 321 (Minn. App. 2007) (quoting Izaak Walton League of Am. Endowment, Inc. v. Minn. Dep't of Natural Res. , 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977) ). Accordingly, we do not address this issue.

The remaining eight hours were unpaid time during which the employees were free to sleep or engage in personal activities, but remained available to assist the clients. If the employees were required to assist clients during their eight hours of personal time, Baywood paid them for those eight hours as well. This payment structure is permitted by Minn. Stat. § 177.23, subd. 11, and there is no issue in this case regarding whether the employees were properly paid during eight-hour personal-time portions of their shifts.

The department argues on appeal that the issue was also forfeited based on the lack of legal analysis or citation to precedent in Baywood's exceptions submitted to the ALJ's report. But this was not the basis for the commissioner's forfeiture analysis in the decision subject to our review.

The department also cites an inapposite and nonprecedential unpublished opinion by this court. See Minn. Stat. § 480A.08, subd. 3(b) (2016).

For example, an employer who paid $10 an hour would be required to pay $15 an hour ($10 x 1.5) for hours in excess of 40 under the FLSA. But under the MFLSA, the same employer would be required to calculate the regular and overtime rates of pay for MFLSA-purposes as follows:
$10 (regular rate under FLSA) x 40 = $400 for first 40 hours of work
$15 (FLSA overtime rate) x 8 = $120 for hours 41-48 under FLSA
$400 + $120 = $520 received during first 48 hours of workweek
$520/48 hours worked = $10.83 regular rate of pay under MFLSA
$10.83 x 1.5 = $16.25 overtime rate under MFLSA for hours 49+.

It would be reasonable to read the regulation to allow deductions for bona fide overtime premiums paid, including those paid under the FLSA, thereby providing for an overtime rate commensurate with the rate calculated under the FLSA. But it would also be reasonable to read the regulation to provide for an even higher overtime premium for hours worked in excess of 48, which would provide a greater benefit than the FLSA to employees working significantly longer work weeks and a greater incentive than the FLSA for employers to keep employee hours below 48 per week.

Although agencies may develop some policy "in a case-by-case method through adjudication of contested cases," it is inappropriate for agencies to use that method on issues of "broad social and political importance." Dullard v. Minn. Dep't of Human Servs. , 529 N.W.2d 438, 445 (Minn. App. 1995). The department does not argue that it was developing policy through case-by-case adjudication.